# Exhibit 1

|  |  |
|---|---|
| My Name | Jesse Majors |
| Address | 6649 South 5500 West |
| City, State, Zip | West Jordan, Utah 84081 |
| Phone | 801-360-6880 |
| E-mail | |

FILED DISTRICT COURT
Third Judicial District
JUN 0 3 2011
SALT LAKE COUNTY
By_____ Deputy Clerk

I am the   X Plaintiff
☐ Attorney for the Plaintiff and my Utah Bar number is _____

In the Justice Court of Utah

___Third___ Judicial District __Salt Lake_____ County
Court Address _450 South State Street, Salt Lake City, Utah 84114__

| | |
|---|---|
| JESSE ANNE MAJORS<br><br>  Plaintiff,<br><br>vs.<br><br>THOMAS JEFFERSON SCHOOL OF LAW, a California Corporation, and RUDY HASL and JEFFREY JOSEPH and BETH KRANSBERGER and ERIC MITNICK and JULIE GARRETT and CLAIRE WRIGHT and JOY DELMAN and JULIE CROMER-YOUNG and ARNOLD ROSENBERG and JANE LARRINGTON and PATRICK MEYER and LISA FERREIRA and ANGELA BAYNE and JAN DAUSS AND LISA CHIGOS and CATHERINE DEAN and ALL MEMBERS OF THE ETHICS COMMITTEE OF THOMAS JEFFERSON SCHOOL OF LAW 2006-2011<br><br>  Defendants. | **AMENDED COMPLAINT**<br><br>Civil No. 110911547<br><br>Judge Maughan<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff complains of Defendants as follows:

**INTRODUCTION**

12  1.  This matter involves Plaintiff's law school career at Thomas Jefferson School of
13      Law (TJSL) during 2006 through 2011.
14  2.  Since the beginning of attendance at TJSL, Plaintiff has been the victim of various
15      crimes including, but not limited to, harassment, intimidation, religious, gender
16      and age discrimination, defamation, slander, libel, intentional infliction of mental
17      anguish and emotional distress, creation of hostile educational environment,
18      ~~violation of her due process and constitutional rights,~~ violations of professional
19      conduct, and unethical behavior.

20              **NATURE OF ACTION AND FACTUAL BACKGROUND**

21  3.  In the first year of law school, Jesse was subjected to an assault by a male student
22      in the law school parking lot. An ethics investigation was started. Jesse was
23      falsely accused of vandalizing the male's car in retaliation for the assault.
24  4.  During the interrogation, Jesse was threatened and sexually harassed by Arnold
25      Rosenberg, the interrogator. He threatened her that she could be kicked out of
26      school, be fined, and go to jail for vandalism. While she continued to maintain
27      her innocence and asked what the school was doing about the assault, the
28      interrogator asked to see Jesse's hands and car keys. Jesse was extremely upset.
29      In response to Jesse getting emotional about the accusation, Mr. Rosenberg said,
30      "This is the kind of thing you will face in your law career. Women like you will
31      have to defend themselves and face aggressive male attorneys. If you act weak
32      and get emotional like you are now, you will never make it as an attorney." As
33      Jesse showed her hands and car keys to Mr. Rosenberg, she asked why he wanted

2

34 to see them. He responded, as he was holding her hands and examining her
35 fingernails, "Because we can have your hands and car keys forensic-tested." Jesse
36 began to cry. Mr. Rosenberg continued his harassment and intimidation by
37 saying, "Hey! There's no crying in law school!" After that response, Jesse
38 grabbed her hands and car keys back and said to go ahead and forensic-test her
39 keys because they would not find anything. She also asked again what was going
40 to happen regarding the assault and Mr. Rosenberg responded, "I don't believe
41 that anything you said even happened." Feeling trapped, intimidated and
42 emotionally held hostage, Jesse agreed that both she and the male student would
43 attend anger management classes to resolve the issue.

44  5.  Nothing was done about the assault and the day after the interrogation, Jesse's car
45 door had been damaged in the school parking lot. Jesse complained to the same
46 committee that she was afraid the male student was responsible for it, but they
47 refused to investigate claiming that Jesse "had no proof". Jesse had to pay $30.00
48 per one-hour session, drive over 1 ½ hours to each session, and submit a
49 completion certificate that she completed the 12 sessions in order to have no
50 negative documentation be placed in her file.

51  6.  While Jesse was at home in Utah attending two funerals and dealing with the
52 overdose of her youngest brother, Thomas Jefferson School of Law and Jesse
53 agreed that she could do a directed study project to continue her education. Jesse
54 was given permission to work with Jane Larrington, the school's research
55 librarian, as her supervisor, on the project. Jesse completed the project without

3

adequate direction, supervision, education, editing assistance, or guidance from the Defendant.

7. In fact, the Defendant did not advise Jesse that there were typographical errors or possible citation errors in her paper. The Defendant, without notifying Jesse or granting her an opportunity to fix the errors or respond, accused Jesse of plagiarism and an investigation was started. The Defendant had a copy of Jesse's paper since December 23, 2009 and no communication between Jane Larrington, Claire Wright and Jesse has occurred until Jesse went back to school in January of 2010 and the investigation itself was not progressing until February, 2010.

8. During the investigation, her due process rights were violated. She was told, via email, by Claire Wright, head of the Ethics Committee, that an investigation had been started and that if Jesse did not hear a response from the Committee "within a week", "please contact (Claire) and let her know". Jesse did not hear from the Ethics Committee as she was told and contacted Claire Wright via email. In fact, Jesse has to wait almost three months to get a response. Claire Wright sent Jesse a notice that a decision had been made on February 22, 2010 and Jesse had until February 26, 2010 to respond. This timeframe was unduly prejudicial and unreasonable as midterms were occurring at the time. It is the Plaintiff's belief that this was an intentional act to threaten and intimidate her into making a decision not in her best interest.

9. Jesse requested answers to some questions regarding the proposal the Ethics Committee had proposed. She had spoken to three Deans (Rudy Hasl, Beth

4

| | | |
|---|---|---|
| 78 | | Kransberger, Eric Mitnick), several Faculty Advisors (Lisa Ferreira, Julie Garrett, |
| 79 | | Angela Bayne) and student advocacy groups (Chris Paulos of the Student Bar |
| 80 | | Association) to get permission to continue her education, extra-curricular |
| 81 | | activities and other academic endeavors while the Ethics Committee made its |
| 82 | | decision. Jesse was very patient regarding the investigational process. She even |
| 83 | | requested appointments with Faculty Secretaries, including Jan Dauss (secretary |
| 84 | | to Dean Hasl) and Skylar Rayhill in which she was ignored multiple times. Dean |
| 85 | | Hasl and Beth Kransberger actually ran from her as she asked for their schedules |
| 86 | | to set up an appropriate time to discuss the situation! |
| 87 | 10. | However, during this process, her future goals both personally and academically |
| 88 | | were halted. She was denied permission to organize a student chapter advocating |
| 89 | | for animal rights. She was denied scholarships in which she was more than |
| 90 | | capable and worthy of being awarded. She was denied permission to go to China |
| 91 | | to study abroad. These actions are egregious, especially in light of the fact that |
| 92 | | she was given permission by Dean Beth Kransberger, and Lisa Ferreira to pursue |
| 93 | | these activities while the review process was going on so as not to miss deadlines. |
| 94 | | After she made substantial progress toward completing these tasks, because she |
| 95 | | reasonably relied on the word of her Dean (who promised to email the appropriate |
| 96 | | personnel and failed to do so) and the word of her Academic Advisor, she was |
| 97 | | sent an extremely rude email revoking this permission and implying to said |
| 98 | | personnel that Jesse had overstepped and blatantly disregarded her superiors. |
| 99 | | Jesse was coerced in turning over her task of implementing a student chapter and |

100 tried her best to do so because she wanted to focus on her education and not on
101 this unnecessary battle. (The Student Chapter fell through without her direction).
102 11. However, revoking permission to go to China was unacceptable and a battle Jesse
103 felt she must fight. It was imperative that she go to China because it was the
104 quickest, most economical and most career-oriented way to graduate, begin her
105 career and get back home to Utah where her family, friends, husband and 1 1/2-
106 year old daughter awaited her. Mandarin Chinese was her undergraduate degree
107 and going to China was a once in a lifetime opportunity to make international
108 contacts to begin her career as an international lawyer. By denying Jesse this
109 permission, she was deprived of her constitutional rights to life, liberty, pursuit of
110 happiness and her right to pursue an education. At the time of the investigation,
111 Jesse was also disallowed to register for the next semester, further hindering her
112 right to an education.
113 12. Professors Julie Cromer-Young, Joy Delman, Claire Wright and other members of
114 the Ethics Committee, (unknown at this time) have defamed her character by
115 inquiring into past semesters, questioning her professors, and viewing past papers
116 she had received highly satisfactory grades on, and other faculty implying that she
117 is guilty of plagiarism under the guise of conducting an investigation, when she is
118 guilty of no such thing.
119 13. During an "informal" hearing, Jesse's mothering skills and age were unethically
120 questioned. Joy Delman and Julie Cromer-Young asked Jesse how old she was
121 and then followed that unethical question with, "how a woman her age handled

122  stress". They questioned how she could raise a 1 ½-year-old daughter and still be
123  a good mother and how Jesse's husband felt about her being away all the time.
124  Jesse refused to answer, stating that it was not related to the investigation and
125  none of their business. Jesse asked to read a prepared statement and was
126  discouraged several times from reading it by Joy Delman who stated that the
127  investigation was "informal and (Jesse's) statement didn't need to be heard."
128  14. The furtherance of her education and career were unreasonably and intentionally
129  delayed. Jesse was lied to by faculty she trusted and whom defamed her to other
130  faculty, professors, potential employers and her peers. After being coerced, under
131  duress and intimidation, and without representation to assist her in her decision,
132  Jesse accepted a proposal to resolve the alleged ethical violation.
133  15. For almost two years, Jesse tried to fulfill her obligations (and did so,
134  successfully) under the proposal, including finding a professor to supervise her on
135  another directed study project, attending 5 hours of legal citation training and
136  completing 5 hours of MCLE Ethics training. Jesse wrote multiple emails and
137  when they were left unanswered, she followed them up with multiple voice
138  messages and even requests for a face-to-face appointment as she was required
139  under the proposal to get preapproval to meet her obligations. She NEVER
140  received a response, from ANYONE she contacted about it. Therefore, Jesse did
141  the ethical, professional thing she do and wrote a directed study paper, without
142  any assistance, attended 5.5 hours of Ethics training in Utah via podcast, writing a

143 summary of watch she watched and got them approved through the State Bar of
144 California.

145   16. Jesse has attended sufficient legal study to be granted a graduation certificate
146       reflecting at least a cumulative 2.5GPA and wrote a directed study paper worth of
147       a passing grade. She is being unethically, unprofessionally, and illegally denied
148       these.

149   17. Upon Jesse's demand that this be done, she has been threatened by Dean Hasl and
150       treated with the utmost disrespect by Jeff Joseph and other personnel. The school
151       has also refused to speak to her family on the phone or email. The school has also
152       disrespected her father, causing Jesse more mental anguish and emotional distress,
153       intentionally inflicted by TJSL.

154   18. The last threat from TJSL was April 15, 2011 in an email in which they threatened
155       to expel her from school, refuse to give Jesse her transcripts and not allow her to
156       graduate or register for more classes. No action on their part has been taken,
157       further preventing the progress of her career, causing Jesse to miss the deadline
158       for taking the Bar exam, thereby increasing the financial and emotional burden on
159       her family.

160                           **JURISDICTION AND VENUE**

161   19. This Court has subject matter jurisdiction.

162   20. Defendants, directly and indirectly, singly and in concert, have made use of the
163       means and instrumentalities of mail and interstate commerce in connection with

the transactions, acts and courses of educational business alleged herein, certain of which have occurred within the District of Utah.

21. Venue for this action is proper in the District of Utah because certain transactions, acts, practices and courses of business alleged in this Complaint took place in this district and because Jesse resides in this district and because certain of the defendants transact business in this district.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. For judgment against defendant in the amount of $200,000,000 (two hundred million dollars); $100,000,000 in actual damages and $100,000,000 in punitive damages.

B. Grade of 4.0 for a paper she has written;

C. Grant of, at least, a 2.20 cumulative GPA;

D. Grant of Certificate of Law and Social Justice;

E. Grant of and distribution of honor cords per participation in several student organizations and foundation of Student Chapter of Animal Legal Defense Fund student organization;

F. Grant of graduation and distribution of accompanying graduation certificate;

G. Injunction against any negative comments or documents being maintained in her file.

Date  6-2-11          Sign here ▶ _[signature]_

Typed or printed name  Jesse Anne Majors